**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ROBERT PHILLIPS,<br>CHUCK ROSS,<br>MICHAEL D. KELLEY,<br>STEPHEN KELLEY,<br>and<br>ANTHONY SMITH<br>on behalf of themselves,<br>and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WOLF FIRE PROTECTION, INC.,<br>JAMES WOLF,<br>and<br>TIMOTHY STROHMER,<br><br>Defendants. | ) | Civil Action No. WDQ-10-C-CV-2804 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Defendants, Wolf Fire Protection, Inc. ("WPF"), James Wolf and Timothy Strohmer, move that Plaintiffs' Complaint be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs seek to hold Defendants liable for alleged violations of state and federal wage and hour laws based on mere boilerplate, conclusory allegations. Such allegations fail to meet the applicable pleading standards set forth by the United States Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and do not provide any basis to establish their liability as a statutory employer or as individuals.

Alternatively, Defendants move that the Court grant its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(b) because there is no dispute of material fact and Defendants are entitled to judgment as a matter of law. Very simply, Plaintiffs have failed to make a sufficient showing of the essential elements of their case as set forth in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## II. BACKGROUND FACTS ALLEGED BY PLAINTIFFS

The Plaintiffs are all former "non-exempt" employees of Wolf Fire Protection, Inc.[1]. (Complaint at ¶1). The instant action alleges that the Plaintiffs were illegally denied overtime pay for hours worked in excess of 40 per week and that they have also worked hours for no pay in violation of the state and federal minimum pay requirements. (Complaint at ¶¶ 15, 16). With regard to Defendants, the **only** allegations made specifically against them in the Complaint are as follows:

> Under Maryland law, Defendant WFP is an entity that can sue and be sued. Its activities affect interstate commerce. It has committed the wrongs set forth below. Defendant Wolf is the President of WFP and is responsible for paying wages to employees of WFP. Defendant Timothy Strohmer is the Vice-President of Operations. He acted at all times for and on behalf of Defendants Wolf and WFP. He was personally involved in the decision to violation [sic] the FLSA and the Maryland Wage laws and was responsible for the payment of wages according to law. (Complaint at ¶ 6)

## III. ARGUMENT

### A. STANDARDS

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544, 570. The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted

---

[1] Plaintiff's factual allegations (though not their conclusory assertions) will be taken as true for the purposes of this Motion only.

unlawfully." ***Francis v. Giamcomelli***, 588 F.3d 186 (4th Cir. 2009) (affirming J. Quarles decision) (citing ***Twombly***, 550 U.S. at 570). Rather, it requires the plaintiff to articulate facts, when accepted as true, that "show" that the plaintiff has stated a claim entitling him to relief. ***Id.*** (citing ***Twombly***, 550 U.S. at 557). The Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." ***Twombly***, 550 U.S. at 555. To discount such unadorned conclusory allegations, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." ***Iqbal***, 129 S. Ct. at 1950. This approach recognizes that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the framework of the complaint to cross "the line between possibility and plausibility of entitlement to relief." ***Twombly***, 550 U.S. at 557 (internal quotations omitted). At bottom, determining whether a complaint states on its face a plausible claim for relief and can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. ***Francis***, 588 F.3d 186, 2009 U.S. App. LEXIS 26188 at *14 (quoting ***Iqbal***, 129 S. Ct. at 1950.)

In utilizing the ***Iqbal*** framework, the Fourth Circuit has dismissed numerous complaints containing no factual allegations, but only legal conclusions tracking the language of a statute. ***See, e.g., Francis v. Giacomelli***, 588 F.3d 186; 2009 LEXIS 26188 (4th Cir., 2009) (concluding that Count I failed to state a plausible claim for relief.); ***Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*** 591 F.3d 250 (4th Cir. 2009) (stating that "bare assertions devoid of further factual enhancement" are not entitled to an assumption of truth and are insufficient as a matter of law to demonstrate the plaintiff's entitlement to relief and that a plaintiff must offer more than "threadbare recitals of the elements of a cause of action" and conclusory statements to

show its entitlement to relief.) (Internal quotations omitted)); and *Monroe v. City of Charlottesville*, 579 F.3d 380 (4th Cir. 2009) (dismissing Plaintiff's claims in accordance with the *Iqbal* standard and denying class certification).

Alternatively, Fed. R. Civ. P. 56 provides the standard for summary judgment and provides that the "judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Essentially, "the moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court's summary judgment inquiry "unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986) (internal citations omitted). "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254.

The judge must be assured that the evidence he examines at summary judgment is as authentic as that which the jury will consider. This requires an evidentiary standard for materials considered on summary judgment which "govern its deliberations and [provide] within what boundaries [the court's] ultimate decision must fall." *Id.* at 254-55. In summary judgment the parties submit materials which create a record; it is on that record only, that the Court rules on summary judgment.

Fed. R. Civ. P. 56 operates under a burden shifting framework, wherein the moving party has the burden to demonstrate that "there is no genuine issue as to any material fact." In so doing,

the moving party need not "support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex Corp*., 477 U.S. at 323 (emphasis omitted). If the moving party makes its motion properly, the burden shifts to the non-moving party, whose "response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Unlike the moving party, the "opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial." *Id*. The opposing party must provide additional materials to successfully defend against summary judgment and those materials must include assurances to the Court that they are authentic and reliable.

The Fed. R. Civ. P. 56 requirements for summary judgment "help assure the fair and prompt disposition of cases." *Orsi v. Kirkwood*, 999 F.2d 86, 91 (4th Cir. 1993). "They also allow a district court to ascertain, through criteria designed to ensure reliability and veracity, that a party has real proof of a claim before proceeding to trial." *Id.*

**B. PLAINTIFFS FAILED TO ALLEGE SUFFICIENT FACTS TO SUSTAIN THEIR CLAIMS AGAINST DEFENDANTS.**

It is clear that the allegations asserted against Defendants in this matter fail to meet the minimum pleading requirements set forth by the Supreme Court in *Twombly* and amplified in *Iqbal*. As set forth in *Twombly*, "a plaintiff's obligation [to state a claim] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555.

The Plaintiffs' allegations against Defendants are a paradigmatic example of deficient, conclusory, boilerplate statements that are legally insufficient under applicable law. There are simply no facts alleged which establish any specific factual circumstances delineating the

purported violations, nor are there dates, witnesses, or other relevant information sufficient to raise Plaintiffs' right to relief. All that the Plaintiffs have done is state Defendants' positions at Wolf Fire Protection and that they committed "wrongs" related to wages. These allegations are insufficient to establish a cause of action. Therefore, Plaintiffs' Complaint must be dismissed.

**C. SUMMARY JUDGMENT IS APPROPRIATE UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE.**

Plaintiffs have broadly claimed that Wolf Fire Protection, James Wolf and Timothy Strohmer failed to compensate them at the rate of one and one-half times their (Plaintiffs') hourly rate of pay when they worked overtime; Wolf Fire Protection failed to pay Plaintiffs at least minimum wage for all hours worked; and that Plaintiffs have worked for no pay. Those allegations are untrue.

Employees of Wolf Fire Protection are assigned to different work sites from time to time to design, install, inspect and provide 24-hour emergency service to building sprinkler systems. Employees are obligated to arrange for their own transportation to each job site and sometimes choose to carpool to work with Foremen, who are provided with Company vehicles. (*See* Exhibit 1, ¶¶ 3-5 of Affidavits)[2].

Wolf Fire Protection does not set up or establish carpooling arrangements for its employees. Carpooling arrangements are handled voluntarily among the employees. (*See* Exhibit 1, ¶6 of Affidavits). Some days when employees carpool to work with their foremen, a foreman may stop by the Wolf Fire Protection shop located in Glen Burnie, Maryland to pick up or drop off some supplies or equipment for the workday and the carpooling employee may assist the foreman in loading or unloading tools, equipment or supplies into or from the Company

[2] Exhibit 1 is the compilation of 33 individual affidavits signed by Wolf Fire Protection, Inc. employees. Handwritten page numbers were inserted by undersigned counsel in the bottom right corner. Note that not all of the affidavits are similarly worded.

vehicle. The process takes approximately 5-10 minutes. (*See* Exhibit 1, ¶¶ 7-8 of Affidavits). Employees have never been instructed or directed to come to the Company shop located in Glen Burnie before the start of the workday or at the end of the workday to pick up or drop off tools, equipment or supplies. (*See* Exhibit 1, ¶10 of Affidavit, pp. 1-39).

When employees carpool to the job site together, no work is performed during the commute. Passengers are free to sleep, eat, read, listen to the radio or to their own music, discuss any subject of their choosing, or choose not to participate in the conversation during the ride. (*See* Exhibit 1, ¶9 of Affidavits).

Employees are responsible for completing and submitting their own weekly timesheets which accurately reflect the total number of hours worked. (*See* Exhibit 1, ¶¶ 10-12 of Affidavits). No employee has ever been instructed or encouraged to fabricate or falsify his timesheets, or to write down less time than actually worked each day. (*See* Exhibit 1, ¶¶ 10-12 of Affidavits).

The Portal-to-Portal Act of 1947 was enacted as an amendment to the Fair Labor Standards Act (FLSA). It was designed to give employees relief and to clarify the law with respect to travel and other activities before and after the work day. The Portal-to-Portal Act provides that minimum wages and overtime are not required for "traveling to and from the actual place of performance of the principal activity or activities which such employee is to perform" or for "activities which are preliminary to or postliminary to said principal activity or activities," unless there is a contract or custom to the contrary. 29 U.S.C. 254 (a).

In 2005, the Supreme Court decided the issue of whether the time spent by meat-processing employees walking from locker rooms to the production line after donning required protective gear and back from the line before doffing this gear should be compensated and

whether the official start of the "workday" for FLSA purposes was when the employees began their jobs on the plant floor. *IBP Inc. v. Alvarez,* 126 S. Ct. 514 (2005). The Court held that the donning and doffing of protective gear were "integral and indispensable" to the employees' principal food-processing activities and were therefore principal activities for purposes of Section 4(a) of the Portal-to-Portal Act. *Id.* Notably, the Court found that time spent walking to the locker rooms where the protective gear was donned was <u>not</u> compensable under the FLSA because it occurred before the employees' first principal activity was performed. *Id.* at 524.

Since that 2005 decision, several actions by groups of employees have been brought regarding the compensability of certain beginning and end of day activities with limited success. *See e.g., Gorman v. Consolidated Edison Corp*., 488 F.3d 586 (2d Cir. 2007) (nuclear power plant employees held not entitled to compensation under the FLSA for time spent going through security or donning and doffing safety equipment because even though time spent getting through security was required to get into and out of the plant and deemed "indispensable" to the employees to work, the time was not "integral" to the "performance of their work" and the security measures were not "essential to completion" of the employees' work and therefore considered preliminary and postliminary activities exempt from compensation under the Portal-to-Portal Act).

In a case very factually similar to this one now before the Court, the Tenth Circuit found that the preliminary activities engaged in by oil rig workers was not compensable. In *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 2006 U.S. App. LEXIS 23189 (10th Cir. 2006), a group of drilling rig employees filed suit against their employer for unpaid overtime. They claimed that while they were not required to carpool to work, they chose to do so for the 3-hour drive to sites that were impassable without a four-wheel drive vehicle and that had limited

parking. *Id.* at *13. In the morning, the crew, at the direction of the foreman, would meet at a convenience store, load their personal safety equipment into the Company vehicle driven by the foreman, one of the rig hands would fill a cooler with drinking water to be used by the crew at the site, and some would purchase food and drinks from the store. *Id.* at *14-15. The foreman drove the vehicle, although sometimes other crew members would take shifts. *Id.* On rare occasions, the foreman would be asked to bring paperwork or equipment to the work site, but it was transported as a favor to the supervisor. *Id.* During the commute, the crew was free to spend their time as they wished and would sleep, eat, read, listen to music, and discuss topics of their choosing. *Id.* at * 16. Occasionally, a crew member would help change a flat tire, open or close access gates along the road, help push the vehicle out of the mud, or put chains on the vehicle's tires. *Id.*

Importantly, the Tenth Circuit held that these preliminary activities were not "integral" or "indispensable" to the workers' principal activities nor did the preliminary activities at the convenience store trigger the start of their workday. *Id.* at *40 (referencing 29 C.F.R. §785.38). The court also found no evidence that the employer regularly required the plaintiffs to pick up or drop off essential equipment or paperwork in their travels, which could have constituted a "principal activity" within the Portal-to-Portal Act. *Id.*

The Tenth Circuit's decision in *Aztec Well Servicing* is instructive in the case *sub judice.* The facts in that case are so similar to the case now before the Court that the same legal conclusion should be adopted.

In both cases, the employees voluntarily carpooled with their foremen; they infrequently helped load equipment into the Company truck at the beginning of the work day; and the workers were free to sleep, eat, read, listen to music, and engage in any conversation of their choosing

during the commute to work. Even more compelling in our case are the affidavits obtained from current employees who affirmed that their timesheets accurately reflected the total number of hours worked and they were not coerced to falsify their timesheets or write down less time than they actually worked. (See Exhibit 1).

The Plaintiffs' choice to carpool to work and occasionally lend a hand to the foreman to load materials are not activities indispensable to their work or integral to the performance of their jobs. Their commute time and 5-10 minutes of occasional assistance at the shop on some mornings are exempt from compensation under the Portal-to-Portal Act.

In sum, this case is appropriate for summary judgment. Plaintiffs have no reliable proof to support their naked claims of unpaid wages to be able to properly proceed to trial.

## IV. CONCLUSION

The Supreme Court has made it clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient for a complaint to survive a Motion to Dismiss. *Iqbal*, 129 S.Ct. at 1949. The Plaintiffs in this case have provided nothing more than a conclusory statement regarding Defendants' titles with Wolf Fire Protection and their purported personal involvement and liability. The Complaint offers no specific facts which would support Defendants liability under state or federal law. There is no evidence that any current or former employee of Wolf Fire Protection was improperly compensated or under-compensated for their work time and, therefore, summary judgment is appropriate.

For the foregoing reasons, Defendants respectfully requests that Plaintiffs' Complaint be dismissed or, alternatively, that the Court grant its motion for summary judgment.

Dated: November 17, 2010

Respectfully submitted,

/s/

Howard K. Kurman
Federal Bar No. 02831
Ari Karen
Federal Bar No. 13848
Laura L. Rubenstein
Federal Bar No. 26338
Offit Kurman, P.A.
8171 Maple Lawn Boulevard, Suite 200
Maple Lawn, Maryland 20759
(p) (443) 738-1500
(f) (443) 738-1535
hkurman@offitkurman.com
akaren@offitkurman.com
lrubenstein@offitkurman.com

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of November 2010, a copy of this *Motion to Dismiss or, Alternatively, Motion for Summary Judgment* and *Memorandum* in Support thereof were mailed, via first-class U.S. mail, postage prepaid to:

Francis J. Collins, Esq.
201 N. Charles Street, 10th Floor
Baltimore, Maryland 21201

/s/

Laura L. Rubenstein